[Civ. No. 4285. Second Appellate District, Division One.—January 30, 1925.]

## SAMUEL W. LUITWIELER, Respondent, v. SOPHIA O. LUITWIELER, Appellant.

[1] CONTRACTS—DISPOSITION OF COMMUNITY PROPERTY — BREACH BY WIFE—FRAUD AND CONSPIRACY — PLEADING. — In this action by a husband against his wife and their son-in-law as the result of alleged receipt and wrongful disposition by the wife of the proceeds from the sale of certain community property and the re-

fusal by the wife to execute deeds or to join in the sale of certain community property contrary to the agreement of the parties, conceding that the complaint, when considered as a pleading charging fraud and conspiracy, was deficient, it contained allegations which, independent of any fraud or conspiracy, set forth a statement of facts sufficient to constitute a good cause of action in favor of the husband and against the wife.

[2] ID.—CONFLICTING EVIDENCE—FINDINGS—APPEAL.—In such action, the trial court having found, upon conflicting evidence, that it was the acts of the defendant wife which prevented the sale of the unsold portions of the land, such finding was conclusive upon appeal.

[3] ID.— INCOMPLETE ACCOUNTS — EVIDENCE — FINDINGS—WRONGFUL APPROPRIATION OF MONEYS. — On appeal from the judgment in such action, there was no merit in appellant's contention that the finding of the trial court that no complete account was kept after a specified date was unsupported by the evidence, where it appeared that after that date the books were kept by respondent himself, while residing in another state, but only from data furnished him by appellant, who was carrying on the business in this state, and there was evidence tending to prove that appellant did not report to respondent all transactions which should properly be entered in the books; and such evidence, taken in connection with the additional proof that appellant claimed to be the sole owner of the property and entitled to the proceeds thereof, justified the further finding of the trial court that appellant had received large sums of money from the sales of said property of which respondent had no account and of which appellant refused to give any account, and which she without right appropriated to her own use and account.

[4] ID.—APPEAL—ASSIGNMENTS OF ERROR—ABSENCE OF ARGUMENT.— Assignments of error in the admission or rejection of evidence, where unsupported by any argument or citation of authority, should not receive consideration by the appellate court.

[5] ID.—DIVISION OF PROCEEDS — PARTNERSHIP. — A writing executed by a husband and wife wherein they agree that "when their lands . . . are finally sold or disposed of the net proceeds thereof after paying all liens and encumbrances thereon and expenses of sale—whether in land, money or securities, shall be equally divided between the parties herein, share and share alike, each to receive one-half thereof," does not constitute the parties thereto a partnership; but, even though such writing be construed as a partnership, thereby entitling the wife to a return of all property contributed by her to the partnership before there should be any division of the partnership property, such construction will not

---

4.  See 2 Cal. Jur. 732.

benefit the wife, where the property contributed to the partnership was not her separate property, but was the community property of the parties.

[6] ID.—EXISTENCE OF PARTNERSHIP — PLEADING—FINDINGS. — In an action by the husband against the wife because of her failure to comply with said contract, the trial court did not commit prejudicial error in failing to find on the wife's contention that a partnership existed between herself and husband, which claim was not made in her original answer but was contained in her amended answer filed at the conclusion of the evidence, under leave to amend her answer to conform to the proof, where she set up in such amended answer, as the basis of her claim of the existence of the partnership, an agreement which wholly failed to establish any such partnership.

---

(1) 31 C. J., p. 151, n. 89.   (2) 4 C. J., p. 883, n. 33.   (3) 31 C. J., p. 157, n. 39.   (4) 4 C. J., p. 1068, n. 22, p. 1069, n. 23. (5) 30 Cyc., p. 370, n. 9.   (6) 30 Cyc., p. 413, n. 15; 38 Cyc., p. 1969, n. 99.

APPEAL from a judgment of the Superior Court of Los Angeles County. Albert Lee Stephens, Judge. Affirmed.

The facts are stated in the opinion of the court.

Haas & Dunnigan, Bradner W. Lee, Bradner W. Lee, Jr., and Kenyon F. Lee for Appellant.

W. S. Taylor and E. W. Forgy for Respondent.

CURTIS, J.—There are four principal grounds advanced by appellant for reversal of the judgment herein. They are: First, that the complaint does not state facts sufficient to constitute a cause of action; second, that the court erred in denying appellant's motion for a nonsuit; third, that the evidence is insufficient to justify the findings; and fourth, errors of law in admission and rejection of evidence.

[1] Considering these grounds in the order named, we will first take up the appellant's contention that the complaint does not state facts sufficient to constitute a cause of action. Among other things, the plaintiff has alleged, in his complaint, that respondent and appellant are hus-

band and wife; that certain real property described therein is their community property; that said parties had entered into a written agreement of date August 7, 1912, concerning said · real property, wherein they had agreed that the proceeds from the sale thereof "whether in land, money or securities, shall be divided between the parties hereto share and share alike, each party to receive one-half thereof"; that appellant had received and used large sums of money coming into her hands from the sale of certain portions of said real property, over and above the amount to which she was entitled, and refused to account to plaintiff for any of the money so received by her; that she has taken in her own name notes and mortgages given to secure the purchase price of certain portions of said land sold by said parties; and that she has refused to execute deeds or to sell the remaining forty acres of said land, or any portion thereof. In addition to these allegations, the complaint contains further statements that appellant had conspired with the defendant, Henry L. Miller, the son-in-law of appellant and respondent, to defraud plaintiff of his interest in said lands, and in other property belonging to plaintiff. Appellant now contends that the complaint does not state a cause of action with respect to alleging fraud and conspiracy, and that the allegations of the complaint in other respects are so dependent upon those alleging fraud and conspiracy that it fails to state any cause of action whatever. In this contention of appellant we are unable to agree. The substance of these allegations of the complaint, after eliminating all reference to fraud and conspiracy, we have briefly stated above, and we think that they sufficiently state a cause of action against appellant. It may be that the complaint, when considered as a pleading charging fraud and conspiracy, is deficient, yet if it contains allegations which, independent of any fraud or conspiracy, set forth a legal demand against the defendant in favor of the plaintiff, a cause of action is stated therein. The position of appellant that such allegations are so dependent upon the allegations of fraud and conspiracy that they do not in themselves state a cause of action is untenable. Take, for instance, the allegation of the complaint that appellant has used large sums of money

coming into her hands from the sale of the community property, and that she has used this money fraudulently and in furtherance of the conspiracy entered into between herself and the said Miller. The gist of this allegation is the illegal retention of all of the money by appellant. As far as the appellant is concerned, this injury to the plaintiff is the same, whether she unlawfully used this money in conspiracy with Miller or whether she did so otherwise. Eliminate all reference to the conspiracy in the above allegation, and there still remains a sufficient material fact—the unlawful use of the money. We find this condition to exist generally throughout the complaint, that is, after striking therefrom all reference to any fraud or conspiracy, there is left a statement of facts sufficient to constitute a good cause of action in favor of the plaintiff and against the defendant and appellant.

[2] Under appellant's contention that the evidence is insufficient to support the findings, she has specified some twelve instances wherein she contends that the evidence is lacking in this respect. We will consider briefly some of the more important of these specifications. Appellant first contends that the evidence is insufficient to sustain or justify the finding that the notices from the defendant, and her acts, prevented the sale of any of the unsold portions of the land. The land described in said agreement had been purchased by the respondent, an undivided one-half thereof in the year 1889, and the balance in the year 1891. It was subdivided into lots and blocks and a map thereof was made and filed for record in the office of the county recorder of the county of Los Angeles. After the subdivision of said lands and after the agreement of September 2, 1912, a number of lots therein were sold by the parties. These sales were made by deeds executed by both appellant and respondent in favor of the respective purchasers. In 1919 one Reese was acting as the agent of the parties for the sale of these lands. A short time prior to September 25, 1919, the respondent, in so far as he was able, made arrangements with the said Reese for the sale of the unsold portions of said lands and so advised appellant. Upon being notified of this fact, appellant wrote Reese on September 25, 1919, as follows: "I am vested with all the right, title and interest in and to the

lots in question and you are not authorized to sell the same."
As a result of this letter received by Reese from appellant
no further sales were made of said lots. There was other
evidence, some of which tended to show that the respondent
had refused to sign any deeds to any of said lots during
the year 1919. With this state of the evidence the court
found that it was the acts of appellant which prevented the
sale of the unsold portions of this land. As the evidence
was conflicting, according to the well-established rule in such
cases, this court will not disturb the finding of the trial
court. There is a further finding that the sales were inter-
rupted in the year 1919 by both parties joining in an oil
lease to the Standard Oil Company. Appellant objects to
this finding as unsupported by the evidence. Assuming that
appellant is correct in this contention, we cannot see that
any importance whatever can be attached to the fact found
therein which would be of any advantage to appellant.
If the lease to the Standard Oil Company did not prevent
the sale of said land, then the action of appellant in notify-
ing Reese on September 25, 1919, not to make any further
sales of the lots in question, might be construed to be the
sole cause which prevented the further sale of said land.
The court further found that one of the purposes of making
said agreement of September 2, 1912, was to settle and re-
move the objections of appellant to respondent involving said
land in his manufacturing business, and it was the inten-
tion of the parties thereto to quickly dispose of all of the
lands described therein. This finding, appellant contends,
finds no support in the evidence. Respondent testified that
"She objected to my putting any money in my business and
that was the grounds of the agreement." The evidence
further shows that at the time the agreement was made the
lots were selling rapidly and we can assume that the parties
considered that this condition would continue. From this
evidence, we are not prepared to say that the court was
not justified in concluding that the parties, at the time they
entered into the agreement, contemplated an early sale of all
the property. [3] Appellant also objects to the finding of
the court that no complete account was kept after May, 1917,
as unsupported by the evidence. It appears that after May,
1917, the books of account were kept by respondent himself,
while residing in Rochester, New York, but only from data

furnished him by appellant, who was carrying on the business in Los Angeles, California. There was evidence tending to prove that the appellant did not report to respondent all transactions which should properly be entered in the books, and for this reason no entry of the matters involved in those transactions was ever made in the books. This evidence was sufficient to support the finding last referred to, and, taken in connection with the additional proof that appellant claimed to be the sole owner of said property and entitled to all proceeds therefor, it justified the further finding of the court that appellant had received large sums of money from sales of said property, ''of which plaintiff has no account and of which defendant has refused to give any account, and which she has without right appropriated to her own use and account.'' While the report of the referee, thereafter appointed by the court, cannot properly be considered primarily as any evidence tending to support this finding, the fact that this report of the referee (which was approved by the court) showed that the appellant had appropriated to her own use $15,353.55 is at least some confirmation of the court's conclusion in this matter. The other specifications of insufficiency of evidence have all been carefully considered by us. Some of the issues involved in these findings covered by these specifications are of little or no concern to either party in this controversy, and their determination one way or the other would not affect the ultimate results of this action. Those findings relating to matters of any material importance are supported by competent evidence. On the whole, we are satisfied that all the material findings in this action find reasonable and substantial support in the evidence.

[4] A large number of the rulings of the court on the admission and rejection of testimony are claimed by appellant to have been erroneous. These assignments are unsupported by any argument or citation of authority. The appellant, in her brief, has merely given the rulings of the court with a short statement of the evidence in connection with which each ruling was made. It is a well-established rule of the appellate courts of this state that questions thus presented should not receive consideration. (2 Cal. Jur. 732; *Thomas* v. *Hacker,* 179 Cal. 731 [178 Pac. 855].)

Nevertheless, we have examined the rulings questioned by appellant and discover no error therein to the prejudice of the appellant.

[5] In addition to the contentions of appellant set forth in the four grounds above stated, she further claims that the agreement of September 2, 1912, is a copartnership agreement, and that upon the dissolution of the copartnership formed thereby there should be returned to her, before any division of the copartnership property is made to either of the parties, all property contributed to her to such copartnership. She further claims that the lands described in said agreement were her own separate property and that their value at the date of the agreement should first be paid to her, and if, after making this payment to her, anything remains of the partnership property it should be divided between herself and the respondent. This agreement of September 2, 1912, is as follows:

"Memorandum of agreement made this second day of September, 1912, between Samuel W. Luitwieler of the first part and Sophia C. Luitwieler, his wife, of the second part, witnesseth: That in consideration of one dollar by each to the other in hand paid at and before the ensealing and delivery of these presents, and of other good and valuable consideration, said parties have agreed and hereby agree that when their lands, known as The Whittier Property, situated in the state of California, are finally sold or disposed of the net proceeds thereof after paying all liens and encumbrances thereon and expenses of sale—whether in land, money or securities, shall be equally divided between the parties hereto, share and share alike, each to receive one-half thereof.

"Witness our hands and seals the day and year first above written.

"SAMUEL W. LUITWIELER.    (L. S.)

"SOPHIA C. LUITWIELER.    (L. S.)"

There is nothing, in our opinion, contained in this agreement that would constitute the parties thereto a partnership. All it purports to do is to provide for a division of the net proceeds of the sale of the land described therein equally between the parties thereto. This interpretation coincides with the testimony of the respondent, who stated that just prior to the execution of this agreement, "Mrs. Luitwieler asked

me to make arrangements to give her half of that property. . . . In response to that I sat down and wrote out the contract and said 'take that to Mr. Bentley, our lawyer, and submit it to him.' '' The contract thus referred to by the respondent was the agreement of September 2, 1912, slightly modified by Mr. Bentley. But, even if the transaction should be construed as a partnership, we find nothing in the evidence to justify appellant's claim that this property belongs to her as her separate estate. The evidence shows that this land was originally acquired by the respondent as the community property of himself and appellant, and in our opinion there is nothing in the evidence to indicate that it ever lost its character as community property. In the agreement itself, the parties thereto refer to it as ''their lands.'' This reference would tend to negative the claim that the property was the separate estate of either of the parties. Therefore, to construe the agreement as creating a partnership between the parties would not benefit appellant's position.

[6] The claim of appellant that a partnership existed between herself and respondent was not made in her original answer, but at the conclusion of the evidence the appellant was granted leave to amend her answer to conform to the proof, and thereafter, under this leave granted, she filed an amendment to her answer, wherein, for the first time, she set forth in her pleadings her contention that a partnership existed between herself and husband. The court made no findings upon the allegations of this amendment to her answer, and the appellant now assigns this failure of the court as prejudicial error entitling her to a reversal of the judgment. In this amendment to her answer, appellant set up the agreement of September 2, 1912, as the basis of her claim of the existence of this partnership. We think it apparent, as we have already stated, that this agreement wholly fails to establish any such partnership. Therefore, the amendment failed to state facts sufficient to constitute any legal defense in said action, and the omission of the court to find upon any of the issues made by said amendment would not amount to error on its part. As the amendment failed to state any legal defense, its allegations were not

material, and the court is not required to find upon any immaterial issue made by the pleadings.

Judgment affirmed.

Conrey, P. J., and Houser, J., concurred.